IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRACTUS, S.A., | |
| Movant, | |
| v. | C.A. No. _____ |
| AMPHENOL CORPORATION, | (MISCELLANEOUS ACTION) |
| Respondent. | |

## MEMORANDUM OF LAW IN SUPPORT OF FRACTUS, S.A.'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

Plaintiff Fractus, S.A. ("Fractus" or "Plaintiff") respectfully submits this memorandum of law in support of its motion to compel compliance by Amphenol Corporation ("Amphenol") with the subpoena *duces tecum* issued on July 25, 2018 by the U.S. District Court for the Eastern District of Texas ("the subpoena"), where the underlying action, *Fractus, S.A. v. AT&T Mobility LLC, et al.*, No. 2:18-CV-00135, is taking place. Fractus's subpoena seeks a limited set of highly relevant documents critical to its claims for patent infringement against mobile telephone service carriers AT&T, Verizon, Sprint, and T-Mobile (collectively, "the Carrier Defendants"). Amphenol is a key provider to the Carrier Defendants of the antennas Fractus accuses of patent infringement. The documents in Amphenol's possession, custody, or control either cannot be produced by the Carrier Defendants or are crucial to verifying the accuracy of other documents that *have* been produced by the Carrier Defendants. Their production does not pose an undue burden upon Amphenol and is not unnecessarily duplicative of other discovery obtained during this litigation. Because discovery requests, including third-party subpoenas, should be construed

liberally, and for all the reasons set forth in detail below, Fractus respectfully requests that the Court grant its motion to compel.

## FACTUAL AND PROCEDURAL BACKGROUND

Fractus is a world-renowned leader in the development of antennas for the telecommunications industry and the inventor of high-performance antennas that allow the Carrier Defendants to deliver high-speed internet access to their customers. On April 9, 2018, Fractus filed four separate actions in the Eastern District of Texas accusing each of the four Carriers of infringing ten of its patents in the field of antenna design ("the Patents-in-Suit"). *See, e.g.*, Luke Burton Declaration ("Burton Dec.")[1], Ex. 1.  The deadline for the parties to substantially complete their document produce was February 8, 2019. Discovery closes on April 15, 2019. Trial begins on September 9, 2019.

Amphenol describes itself as "a leading global interconnect solutions and antenna provider to the mobile networks market, offering a wide product portfolio supporting virtually every wireless communications standard."  Burton Dec., Ex. 2.  Amphenol's world headquarters are in Wallingford, Connecticut.[2]  Burton Dec., Ex. 3.  Amphenol supplies antennas to all four of the Carrier Defendants.  Burton Dec. ¶ 6.

On July 25, 2018, Fractus served the subpoena on Amphenol, seeking certain documents pertinent to antenna models sold by Amphenol.  Burton Dec., Ex. 7.  Specifically, Fractus propounded eight document requests seeking "drawings, schematics, diagrams, datasheets, blueprints and/or electromagnetic simulation files" sufficient to identify certain characteristics of

---

[1] "Burton Dec." refers to the Declaration of Luke J. Burton in Support of Fractus's Motion To Compel Compliance With Subpoena *Duces Tecum* filed concurrently herewith.
[2] Fractus and Amphenol agree that this District is the appropriate venue to resolve this dispute. Burton Dec. ¶ 14.

the accused antennas; sales and marketing communications concerning the accused antennas;

contracts and agreements with the Carrier Defendants regarding the accused antennas, revenues

therefrom, and indemnification agreements related thereto; licenses pertaining to multiband

antenna technology; and communications regarding Fractus.  *Id.* at Attachment A.  Fractus

propounded parallel discovery requests upon the Carrier Defendants.  *See, e.g.,* Burton Dec., Ex.

5.

Amphenol served objections to the subpoena, taking issue with Fractus's definition of

certain terms.  Burton Dec., Ex. 6.  In an effort to narrow the parties' dispute, on August 2, 2018,

Fractus provided Amphenol with a list of the antennas it was accusing of infringement in the

underlying litigation, and Amphenol produced a limited number of responsive documents.

Burton Dec., Ex. 10.  As discovery progressed, Fractus encountered numerous discrepancies

between technical, sales and marketing documents produced by the Carrier Defendants and those

produced by third-party antenna providers like Amphenol.  Burton Dec. ¶ 10.  In addition, as

discovery progressed, and as the Carrier Defendants' production of previously unavailable,

highly confidential materials enabled Fractus to refine its contentions regarding which antennas

infringed the Patents-in-Suit, Fractus updated its infringement contentions and presented

Amphenol with its revised list of accused antennas on January 9, 2019.[3]  Burton Dec., Ex. 7.

That revised list included a limited number of certain models of accused antennas that had been

on Fractus's initial list, as well as certain newly accused antenna models whose infringement

Fractus had discovered upon review of the Carrier Defendants' discovery. *Id.*

---

[3] On January 30, 2019, Fractus filed its formal motion to amend its infringement contentions in
light of the newly-discovered information. Since the outset of the litigation, Fractus has timely
provided the Carrier Defendants with updated infringement claim charts as it prepared them
upon receipt of their confidential technical information.

On January 18, 2019, following an exchange of messages, Fractus and Amphenol met

and conferred telephonically in an effort to reach agreement on Amphenol's compliance with the

subpoena. Burton Dec. ¶ 13.  During that call and a subsequent one on January 24, Amphenol

indicated that it would not produce any schematics, technical documents, sales or marketing

information for the newly identified accused antenna models on the ground that they "were not

in the case."  *Id.* ¶ 13.  Amphenol further refused to produce the requested simulation files for

any of the accused antenna models, contending that datasheet information was sufficient. *Id.* ¶

14.  Finally, Amphenol refused to search for any of its own communications regarding Fractus or

its patents on the ground that they are irrelevant, as Amphenol is not a party. *Id.* ¶ 14. In

subsequent correspondence on January 24, 2019, Amphenol clarified that it would not produce

marketing materials; antenna installation, maintenance, service or repair cost information; or pre-

suit communications regarding *any* of the accused antenna models because "the carrier

defendants will have copies of whatever marketing materials Amphenol provided" and because

"Amphenol, as a third party, should not be forced to provide such documents."  Burton Dec., Ex.

11.

Following a further exchange of emails, the parties were unable to resolve these issues

without the court's intervention despite their good-faith efforts to do so, pursuant to District of

Connecticut Local Rule 37(a). Burton Decl. ¶ 16.

## LEGAL STANDARDS

"Pursuant to Federal Rule of Civil Procedure 45, a party may serve a subpoena

commanding a nonparty to attend and testify or to produce designated documents." *Sberbank of*

*Russia v. Traisman*, 2016 WL 4479533, at *1 (D. Conn. Aug. 23, 2016) (granting motion to

compel and denying motion to quash and for protective order); *see also* Fed. R. Civ. P.

4

45 Advisory Committee Note ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34.").

Rule 26(b)(1) allows discovery of non-privileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case." It directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (affirming sanctions against party who failed to comply with court's discovery order requiring party to comply with document and deposition requests).

"The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Ferguson v. TD Bank, N.A.*, 268 F.R.D. 153, 155 (D. Conn. 2010) (granting motion to compel). "Relevance" under Federal Rule of Civil Procedure 26(b)(1) has been construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978)).

"[T]he objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Ferguson*, 268 F.R.D. at 155 (citing *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co*., 105

5

F.R.D. 16, 42 (S.D.N.Y. 1984) (granting in part motion to compel)). Whether a subpoena imposes an undue burden depends upon factors such as relevance, the requesting party's need for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed. *Sberbank*, 2016 WL 4479533, at *1.

## ANALYSIS OF SPECIFIC DOCUMENTS AND THINGS SOUGHT BY FRACTUS

Pursuant to District of Connecticut Local Rule 37(b), Fractus identifies the following limited number of highly significant subpoenaed documents that are critical to its infringement case against the Carrier Defendants but that Amphenol is refusing to produce:

1. Technical Documents (Subpoena Attachment A, Request No. 2)

Amphenol has refused to produce subpoenaed technical documents for the antenna models Fractus called to its attention in its January 9, 2019 correspondence—documents central to Fractus's ability to demonstrate infringement by the Carrier Defendants. Burton Dec., Ex. 7. Specifically, Fractus has sought "[d]ocuments such as drawings, schematics, diagrams, datasheets, blueprints and/or electromagnetic simulation files, sufficient to identify the following characteristics" of the accused antenna models:

    a.   the arrangement of the antenna arrays and their antenna elements;

    b.   the structure of the antenna arrays and their antenna elements;

    c.   the size of the antenna arrays and their antenna elements;

    d.   the spacing between antenna arrays, as well as the spacing between antenna elements;

    e.   the shape of the antenna elements;

      f.   the frequency ranges and frequency bands at which the antenna arrays and each individual antenna element within the arrays is capable of operation;

      g.   the polarizations, gain, radiation patterns and impendence and impedance patterns, and electrical downtilt capabilities associated with the antenna arrays;

      h.   the types of cellular telecommunications networks and systems that the antenna is capable of servicing (e.g., GPRS, EDGE, CDMA, GSM, EV-DO, LTE, TDMA, UMTS, HSPA, HSPA+);

      i.   the mechanical specifications of the antenna and the antenna arrays (and their antenna elements), such as their dimensions, material specifications, and any modular systems to adjust height; and

      j.   the type of distribution network which would be employed to excite the antenna elements of the antenna arrays.

Burton Dec., Ex. 4 at Attachment A at 5-6. This technical information tracks the language of the Patents-in-Suit and is essential to Fractus's infringement case. *See Ferguson*, 268 F.R.D. at 155 (relevance includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is ***or may be*** in the case" (emphasis added)). During the parties' teleconferences and in correspondence, Amphenol never contended that the bulk of this information was not relevant and indeed produced such information—except for the requested simulation files and element-level information, addressed below—for the antenna models Fractus originally identified, never previously contending that locating it posed an undue burden. *See id.* ("the objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.")

Instead, Amphenol now contends it should not be required to produce these documents because the newly-identified antennas are currently not "in the case." *See*, Burton Dec., Ex. 11 at 3-4. However, Fractus discovered that these antenna models infringed the Patents-in-Suit only after receiving from the Carrier Defendants highly confidential information sufficient to make an infringement accusation. Furthermore, as soon as Fractus confirmed its good faith belief that the relevant antenna models infringed, it promptly served updated infringement claim charts on the Carrier Defendants and moved the court at the end of January for leave to formally serve its revised infringement contentions. *See Ferguson*, 268 F.R.D. at 155 (relevant documents are those that relate to "any issue that is ***or may be in the case***") (emphasis added). Amphenol is not entitled unilaterally to determine which antenna models are or are not "in the case" or to delay production until after the court rules on Fractus's motion, especially when discovery is set to close in less than two months.

Moreover, on numerous occasions, courts in the Eastern District of Texas, where the underlying case is being heard and where Fractus's motion to amend is currently pending, have required accused infringers to produce information about products not specifically recited in the patentee's infringement contentions when, like here, the patentee has explained how the products in question operate similarly. *See, e.g.*, *ROY-G-BIV Corp. v. ABB, Ltd.*, 2014 WL 12465424, at * (E.D. Tex. Feb. 25, 2014) ("Because RGB has presented a specific theory of infringement, RGB is entitled to discovery on the DigiVis 500, a reasonably similar product"); *DDR Holdings, LLC v. Hotels.com*, 2012 WL 2935172, at *3 (E.D. Tex. July 18, 2012) (granting motion to compel and finding that "infringement contentions are not intended to impose rigid boundaries that confine the scope of discovery to only those products that are specifically identified therein. This is particularly true when, as DDR did here, a party specifically identifies a series of products that

may operate in a matter 'reasonably similar' to other products specifically identified in the contentions."); *Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 654-55 (E.D. Tex. 2009) (holding that "there is no brightline rule that discovery is permanently limited to the products specifically accused" in infringement contentions and that "[w]hile discovery is not necessarily limited to the products explicitly identified in a plaintiff's infringement contentions, the Plaintiff must demonstrate that it has notified the Defendant of a specific theory of infringement and that the products for which discovery is sought operate reasonably similarly to that theory.") Here, Fractus has provided to both Amphenol and the Carrier Defendants detailed infringement contentions specifically explaining how all of the antennas in question infringe the Patents-in-Suit.

Additionally, Amphenol contends that it need not produce certain technical information for *any* antennas "on an individual element" level because Fractus never originally requested such information.  Burton Dec., Ex. 11 at 3-4.  However, Fractus specifically identified antenna element-level information in eight out of ten subcategories for which it seeks documents.  Burton Dec., Ex. 4 at Attachment A at 5-6.  Thus, Amphenol's refusal to produce such information on this basis lacks merit.

Finally, Amphenol argues it should not have to produce simulation files for *any* of the accused antenna models because it believes certain datasheets it produced are sufficient for Fractus's purposes.  However, Amphenol is not entitled to decide which information in its possession, custody or control is or is not important to Fractus's case, and in fact the simulation data Fractus seeks provides important information over and above the datasheet information Amphenol previously produced.  For instance, simulation data is relevant to issues of

infringement such as whether an antenna element is a "multiband" element and whether it is operable in frequency ranges claimed by the patents-in-suit. *See Ferguson*, 268 F.R.D. at 155.

For all these reasons, Amphenol should be required to produce all of the technical information sought in the subpoena for all accused antenna models and at the requested level of detail.

2.   Sales and Marketing Documents (Subpoena Attachment A, Requests Nos. 3, 4 and 5)

In the subpoena, Fractus requested Amphenol produce the following highly relevant sales and marketing information:

> 3. Your sales and marketing communications concerning multiband base station antennas, since one year before your first sale of such an antenna to any Defendant, including but not limited to sales and marketing communications sent or presented to Defendants.
>
> 4. All contracts and agreements with the Defendants concerning your sale of multiband base station antennas and/or your maintenance, service, installation and repair of any such antenna.
>
> 5. Documents sufficient to identify your revenues (by year and, if available, by product) collected from Defendants for any service related to the antennas responsive to Request 1, including maintenance, service, installation and repair of any such antenna.

Burton Dec., Ex. 4 at Attachment A at 6.  This information will form a crucial part of Fractus's damages case as well as its efforts to prove infringement.

Yet Amphenol refuses to produce this information for *any* of the accused antenna models on the ground that "the carrier defendants will have copies of whatever marketing materials Amphenol provided" and because "Amphenol, as a third party, should not be forced to provide such documents."  Burton Dec. Ex. 11 at 4.  However, this argument runs counter to numerous cases in which courts have granted motions to compel over precisely such objections. For instance, in *LG Display Co., Ltd. v. Chi Mei Optroelectronics Corp*., 2009 WL 223585, at *1

(S.D. Cal. Jan. 28, 2009), the court granted the patent-holder's motion to compel a third party's compliance with the patent-holder's document subpoena. The court rejected the third party's arguments that the subpoena was overly broad and sought irrelevant documents. *Id.* at *2. The third party further argued that "the documents sought by Plaintiff's Subpoena are duplicative in that these documents are readily attainable from the defendants in the underlying matter." *Id*. at *3. However, the court found "this argument unavailing, particularly in light of Plaintiff's desire to test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists." *Id.*

Similarly, in *High Point SARL v. Sprint Nextel Corp*., 2011 WL 124534, at *1 (D. Kan. Jan. 14, 2011), the court granted the patent-holder's motion to compel compliance with the patent-holder's subpoena by Ericsson, a third-party manager of defendant Sprint's cellular network. The subpoena included requests for, *inter alia*, "documents related to the design, operation, structure, function, configuration or installation of Sprint's CDMA network or any component of Sprint's CDMA network provided by Sprint to Ericsson" and "documents sufficient to identify all major elements that are or have been a part of Sprint's CDMA network." *Id.* In response, "Ericsson argue[d] that High Point should be required to first obtain the subpoenaed documents from Sprint before seeking the documents from Ericsson so as to avoid imposing undue burden or expense on Ericsson." *Id.* However, the court held that, "in the interest of judicial economy and efficiency, Ericsson, the contractual custodian of the subpoenaed documents, should comply with the subpoena and provide High Point [with] all responsive documents. The Court sees no undue burden or expense that would require High Point to first seek these documents from Sprint." *Id.; see also Viacom Int'l, Inc. v. YouTube, Inc*., 2008 WL 3876142, at *3 (N.D. Cal. Aug.18, 2008) (granting motion to compel third-party

production and finding "[t]here is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession."); *Software Rights Archive, LLC v. Google Inc.*, 2009 WL 1438249 (D. Del. May 21, 2009) (granting motion to compel third-party document subpoena and finding "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party" (quoting *Coffewille Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.*, 2008 U.S. Dist. LEXIS 91224, at *5 (E.D. Ark. Nov. 6, 2008)); MTC).

Here, as in *LG* and *High Point*, for those documents of the type Fractus could obtain (and in some cases has obtained) from the Carrier Defendants, Fractus is entitled to "test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists." *LG*, 2009 WL 223585, at *3. Indeed, Fractus has encountered numerous discrepancies—many of them highly consequential—between documents produced by the Carrier Defendants and those produced by third parties like Amphenol, especially sales documents. [Ex. __.]  Fractus has invested substantial resources in attempting to reconcile this conflicting information, and, in order to obtain a complete picture, requires sales and marketing information from both the Carrier Defendants and Amphenol.  In addition, for many of these sales and marketing documents, Amphenol, not the Carrier Defendants, is either the *only* party in possession, custody or control of the information or the "contractual custodian of the subpoenaed documents" and should therefore be required to produce them. *High Point*, 2011 WL 124534, at *1.

Accordingly, Amphenol should be required to produce the sales and marketing information sought in the subpoena.

3. <u>Communications Regarding Fractus and/or its Patents (Subpoena Attachment A, Request No. 8)</u>

Finally, in the subpoena, Fractus seeks "[c]ommunications mentioning Fractus or any of the patents-in-suit, including communications with the Defendants." Here, again, Amphenol has refused to produce such communications with the Carrier Defendants from before commencement of the litigation on the same basis set forth above, i.e. that "the carrier defendants will have copies of whatever pre-suit communications Amphenol had with the carrier defendants regarding Fractus."  Burton Dec., Ex. 11 at 4.  But for the same reasons set forth above, this justification lacks merit. In addition, Amphenol has not articulated any reason why it should not produce other communications regarding Fractus or the Patents-in-Suit that do not involve the Carrier Defendants. Amphenol should be required to produce these communications, too.

## **CONCLUSION**

For all the reasons set forth above, Fractus respectfully requests that the Court compel Amphenol to comply with its subpoena and produce the requested documents.

Dated:  February 25, 2019                    Respectfully submitted,

*/s/ Robert W. Henoch*
_____

Robert W. Henoch
**KOBRE & KIM LLP**
800 Third Ave.
New York, NY 10022
Telephone: 212-488-1200
Robert.henoch@kobrekim.com

Michael K. Ng
Daniel A. Zaheer
Michael M. Rosen
Luke J. Burton
**KOBRE & KIM LLP**

13

150 California Street, 19th Floor
San Francisco, California 94111
Telephone: 415-582-4800
Michael.ng@kobrekim.com
Daniel.zaheer@kobrekim.com
Michael.rosen@kobrekim.com
Luke.burton@kobrekim.com