## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| FRACTUS, S.A., | § § § | |
| Movant, | § § | C.A. No. 3:19-mc-00024-AWT |
| v. | § § | |
| AMPHENOL CORPORATION, | § § § | |
| Respondent. | § § | |

## AMPHENOL CORPORATION'S RESPONSE TO FRACTUS, S.A.'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*

ORAL ARGUMENT REQUESTED

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ..................................................................................................4

    A.     Amphenol's Compliance with Fractus's Subpoena .................................5

    B.     Fractus's January 2019 Request That Amphenol Redo Its Production .................7

    C.     The Parties Meet and Confer ....................................................................9

    D.     Fractus Serves Three Additional Subpoenas .........................................10

III.    LEGAL STANDARD.........................................................................................10

    A.     Proper Venue For Motion to Compel .....................................................10

    B.     Discovery Against Nonparties .................................................................11

    C.     Issuing Party's Duty to Avoid Undue Burden or Expense .....................12

IV.     ARGUMENT ......................................................................................................13

    A.     Fractus Improperly Filed Its Motion To Compel In This Court ............13

    B.     Fractus's Requests For Production Are Improper ..................................14

        1.     Technical Documents................................................................15

        2.     Sales and Marketing Documents ..............................................17

        3.     Communications Mentioning Fractus and/or Its Patents ..........20

    C.     Fractus Has Failed To Take Reasonable Steps To Avoid Imposing Undue Burden And Expense On Nonparty Amphenol ....................................21

V.      CONCLUSION...................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*AT&T Mobility*,
  Case No. 2:18-cv-00135, Dkt. No. 78 ......................................................................5

*AT&T Mobility*,
  Dkt. No. 19 ...............................................................................................................5

*AT&T Mobility*, Case No. 2:18-cv-00135, Dkt. No. 150 .............................................9

*ATLC, Ltd. v. Eastman Kodak Co.*,
  No. 6:06-CV-416-ORL-19KRS, 2006 WL 3422413 (M.D. Fla. Nov. 28, 2006) .............12, 21

*Cusumano v. Microsoft Corp.*,
  162 F.3d 708 (1st Cir. 1998) .................................................................................12

*Fractus S.A. v. AT&T Mobility LLC, et al.*,
  No. 2:18-cv-00135 (E.D. Tex.) ...............................................................................1

*Fractus, S.A. v. AT&T Mobility LLC*,
  No. 2:18-cv-00135-JRG (E.D. Tex.) ........................................................................5

*Fractus, S.A. v. Sprint Communications Company, L.P., et al.*,
  No. 2:18-cv-00136-JRG (E.D. Tex.) ........................................................................5

*Fractus, S.A. v. T-Mobile US, Inc., et al.*,
  No. 2:18-cv-00137-JRG (E.D. Tex.) ........................................................................5

*Fractus, S.A. v. Verizon Communications Inc., et al.*
  (Case No. 2:18-cv-00138-JRG) ...............................................................................5

*Haworth, Inc. v. Herman Miller, Inc.*,
  998 F.2d 975 (Fed. Cir. 1993) .................................................................11, 12, 19

*High Point SARL v. Sprint Nextel Corp.*,
  No. 09-2269-CM-DJW, 2011 WL 124534 (D. Kan. Jan. 14, 2011) .......................19

*JMC Rest. Holdings, LLC v. Pevida*,
  No. 14 CIV. 6157(WFK)(VMS), 2015 WL 2240492 (E.D.N.Y. May 12, 2015) .............11, 13

*LG Display Co., Ltd. v. Chi Mei Optroelectronics Corp.*,
  No. 08cv2408-L (POR), 2009 WL 223585 (S.D. Cal. Jan. 28, 2009) ....................18

*Med. Components, Inc. v. Classic Med., Inc.*,
  210 F.R.D. 175 (M.D.N.C. 2002) ...........................................................................11

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*,
 No. 05 CIV.6298(PKC), 2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006)............................13, 22

*Solarex Corp. v. Arco Solar, Inc.*,
 870 F.2d 642 (Fed. Cir. 1989)................................................................................................11

*Tucker v. Am. Int'l Grp., Inc.*,
 281 F.R.D. 85 (D. Conn. 2012)..........................................................................11, 12, 14, 21

*Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*,
 No. 10-CV-35A SR, 2013 WL 5652759 (W.D.N.Y. Oct. 15, 2013).......................................22

## RULES

Fed. R. Civ. P. 26(b) ..................................................................................................................12, 14

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................................................12, 14

Fed. R. Civ. P. 45.................................................................................................................10, 13, 22

Fed. R. Civ. P. 45(d)(1) ...................................................................................................... *passim*

Fed. R. Civ. P. 45(d)(1)-(2).......................................................................................................21, 22

Fed. R. Civ. P. 45(d)(2)..................................................................................................................21

Fed. R. Civ. P. 45(d)(2)(B)(i) .............................................................................................. *passim*

Fed. R. Civ. P. 45(d)(2)(B)(ii) ...............................................................................................4, 11, 14

Non-party Amphenol Corporation ("Amphenol") respectfully requests that this Court deny Plaintiff Fractus S.A.'s ("Fractus") motion to compel compliance with its subpoena *duces tecum*, served in the underlying action *Fractus S.A. v. AT&T Mobility LLC, et al.*, No. 2:18-cv-00135 (E.D. Tex.) on July 25, 2018 ("Subpoena"), because (1) this Court is an improper venue for the instant motion under the Federal Rules of Civil Procedure; (2) Amphenol has already complied with the subpoena and the additional discovery that Fractus seeks – beyond the voluminous discovery previously produced – would cause Amphenol to incur significant expenses in violation of the Federal Rules; and (3) Fractus has failed to take reasonable steps to avoid imposing undue burden and expense on non-party Amphenol, as required by the Federal Rules.

## I.    INTRODUCTION

On April 4, 2018, Fractus, a Spanish licensing company, sued the four major cellular carriers (AT&T, Sprint, T-Mobile, Verizon) in the United States District Court for the Eastern District of Texas, alleging infringement of ten different patents.  On June 18, 2018, as required by the Texas court, Fractus served its infringement contentions, alleging that thousands of antenna models incorporated into Defendants' networks (a small percentage of which included approximately one hundred different Amphenol antenna models), infringed.

On July 25, 2018, Fractus subpoenaed non-parties Amphenol Corporation (based on Connecticut) and Amphenol Antenna Solutions, Inc. (based in Illinois), seeking detailed discovery on the "multiband" antennas purportedly used by the Defendants as part of the infringing instrumentalities, as alleged in Plaintiff's infringement contentions.  The Subpoenas purported to require compliance in San Francisco, California.  Fractus provided Amphenol with a list of accused Amphenol antenna models on August 2, 2018, and Amphenol timely served its objections to the subpoenas on August 31, 2018.  Fractus did not respond to Amphenol's objections, including

ORAL ARGUMENT REQUESTED

Amphenol's objection directed to the definition of "multiband" antennas. Fractus also did not respond to Amphenol's offers to meet and confer regarding the scope of certain requests for production.  Amphenol completed its (voluminous) rolling production of responsive documents by November 13, 2018, using the list of antennas provided by Fractus on August 2.  At that point, Amphenol's compliance with the subpoenas was complete.  Amphenol nonetheless made a small supplement of its production in December 2018, based on Fractus's request.

On January 9, 2019, Fractus disclosed a revised – mostly new and different – list of accused products and demanded that Amphenol redo its production.  Fractus claimed that the newly accused antennas were "omitted" from Amphenol's prior productions.  But just eight antennas on the revised list overlapped with those in Fractus's June 2018 infringement contentions, and many of the newly identified antennas were "single band" antennas, not the "multiband" antennas that were the subject of Fractus's July 2018 subpoena.  On January 11, 2019, less than 48 hours after asking Amphenol to redo its production and while Amphenol was considering that request, Fractus accused Amphenol's completed and previously unobjected-to production of being deficient. Fractus contended that Amphenol's November 2018 production was deficient because Amphenol failed to produce technical documentation for antennas that Fractus first identified to Amphenol on January 9, 2019, and because Amphenol's production was limited to the "multiband" antennas set forth in the July 2018 subpoenas.

Fractus and Amphenol met and conferred twice by phone.  On January 18, 2019, Fractus represented that the newly identified antennas were "in the case."  That claim was false.  As of January 18, 2019, the newly identified antennas had not been accused in the Texas litigation.  The parties conferred again on January 24, 2019, but the newly identified antennas were still not formally accused.  Fractus first moved for leave to amend its infringement contentions to add the

newly identified antennas on January 30, 2019; the court has not yet ruled on the motion.  In the absence of the Texas court's decision on Fractus's motion, Amphenol could not fairly evaluate Fractus's facially burdensome request that Amphenol redo its previously completed production.

On February 25, 2019, while its motion for leave to amend was still pending in the Texas court, Fractus filed the instant motion to compel.  In addition to Fractus's request that this Court order Amphenol to redo its production to cover the revised and belatedly newly identified list of newly accused products, Fractus also seeks certain element-specific technical information that is absent from its Subpoena.  In other words, Fractus's motion not only asks the Court to compel non-parties to redo a voluminous production, it asks the Court to broaden the scope of the production beyond that specified in the original Subpoenas.  Fractus does not explain why the thousands of technical files that Amphenol already produced are insufficient to satisfy its original request.  Fractus further requests that this Court order Amphenol to produce certain sales and marketing documents, agreements, and communications that Fractus could obtain, and in some instances has already obtained, from the Defendants.  Finally, Fractus requests that this Court order Amphenol to search the entirety of its communications for all time for "mentions" of Fractus or its patents, based only on rank speculation that such non-privileged communications may exist.

On March 4, 2019, while its motion for leave to amend and the instant motion was pending, Fractus served Amphenol Corporation and Amphenol Antenna Solutions with two more subpoenas, requesting the same detailed technical, financial, and marketing documents and testimony sought by the July 2018 subpoenas, but now with a different list of antennas.  A few days later, On March 8, 2019, Fractus served a third round of subpoenas on Amphenol Antenna Solutions, seeking additional details on the same subject matter as the requests in its March 4, 2019 subpoenas, and the instant motion to compel.  As noted, the Texas court has yet to rule that the

3

antennas on which Fractus seeks discovery – through its five subpoenas and this motion to compel – are within the scope of the Texas litigations.

The Court should deny Fractus's motion to compel for three independent reasons.  First, this Court is an improper venue under Federal Rule of Civil Procedure 45(d)(2)(B)(i) because the Subpoena requests compliance in another district, the Northern District of California.  Second, the cumulative and unduly burdensome discovery sought by Fractus—including a redo of Amphenol's prior production; technical information that Fractus failed to request; documents that Fractus could obtain from the Defendants; and an overly broad and speculative request for non-party communications—would impose significant expense on Amphenol in violation of Federal Rule of Civil Procedure 45(d)(2)(B)(ii).  Third, Fractus has failed to take reasonable steps to avoid imposing undue burden and expense on non-party Amphenol, as required by Federal Rule of Civil Procedure 45(d)(1), at least through its failure to timely respond to Amphenol's objections, its failure to timely respond to Amphenol's contemporaneous offers to meet and confer, its failure to timely raise its revised list of accused antennas, and its filing of the instant motion before obtaining leave to amend its infringement contentions.

## II.     BACKGROUND

Amphenol Corporation, and its wholly-owned subsidiary, Amphenol Antenna Solutions, Inc., manufacture base station antennas, typically sold to cellular carriers to be incorporated into those carriers' networks.  Amphenol Antenna Solutions resides in Illinois and is headquartered in Rockford, Illinois.   Amphenol Corporation resides in Connecticut and is headquartered in Wallingford, Connecticut.

On April 4, 2018, Fractus, a Barcelona-based Spanish licensing company, sued the four major cellular carriers (AT&T, Sprint, T-Mobile, Verizon) in the United States District Court for

the Eastern District of Texas.[1]  Fractus alleged that the carrier Defendants infringe ten Fractus patents by using certain third-party antennas, including antennas made by Amphenol.  *See, e.g., AT&T Mobility*, Case No. 2:18-cv-00135, Dkt. No. 1.  On June 18, 2018, in compliance with the Court's Docket Control Order and the local patent rules, Fractus served its original infringement contentions alleging that thousands of antenna models incorporated into Defendants' networks (a small percentage of which included approximately one hundred different Amphenol antenna models), infringed.  *Id.*, Dkt. No. 78.  The deadline for substantial completion of document production was February 8, 2019, and fact discovery closes April 15, 2019.  *Id.*

## A.    Amphenol's Compliance with Fractus's Subpoena

On July 25, 2018, Fractus served two identical document subpoenas on non-parties Amphenol Corporation and Amphenol Antenna Solutions, Inc., requesting documents sufficient to show, among other things, "each ***multiband*** antenna sold in the United States (including all territories thereof) since the first date of sale of any such antenna, including the model number, all purchaser(s) … date of sale, sale price … cost of goods sold, and gross profit".  (Declaration of Bradley Hyde ("Frenkel Decl."), Ex. A, July 25, 2018 Document Subpoena, at Request No. 1.)[2] The Subpoena also requested technical information sufficient to show physical characteristics of each multiband antenna such as its arrangement, structure, size, spacing, shape, frequency ranges, polarizations, gain, radiation and impedance patterns, and operability with various networks.  (*Id.*,

---

[1] *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-cv-00135-JRG (E.D. Tex.) ("*AT&T Mobility*"); *Fractus, S.A. v. Sprint Communications Company, L.P., et al.*, No. 2:18-cv-00136-JRG (E.D. Tex.) ("*Sprint Commc'ns*"); *Fractus, S.A. v. T-Mobile US, Inc., et al.*, No. 2:18-cv-00137-JRG (E.D. Tex.) ("*T-Mobile*"); *Fractus, S.A. v. Verizon Communications Inc., et al.* (Case No. 2:18-cv-00138-JRG) ("*Verizon Commc'ns*").  These four cases were consolidated under lead case 2:18-cv-00135 by District Court Judge Rodney Gilstrap on May 29, 2018.  *AT&T Mobility*, Dkt. No. 19.

[2] All emphasis added unless otherwise noted.

Ex. A, July 25, 2018 Document Subpoena, at Request No. 2.)[3]  The Subpoenas purport to require compliance at a San Francisco address located in the Northern District of California.  (*Id.*, Ex. A, July 25, 2018 Document Subpoena, at 1.)

Shortly thereafter, on August 2, 2018, Fractus provided Amphenol with a list of nearly 100 accused Amphenol antennas that were identified in its infringement contentions served pursuant to the Eastern District of Texas Patent Local Rules.[4]  (*Id.*, Ex. B, Michael Ng 8/2/19 email to Rick Frenkel.)

On August 31, 2018, Amphenol served its responses and objections to the Subpoena. Amphenol objected to the phrase "multiband base station antenna" as vague and ambiguous, and stated that it would apply its understanding of this phrase in interpreting the scope of the requested documents.  (*Id.*, Ex. C, at Responses 1, 2.)  Amphenol also objected to various categories of requested documents that were overly broad, and that Fractus could obtain from the carrier Defendants.  (*Id.*, Ex. C, at Responses 3-5, 8.)  Amphenol offered to meet and confer regarding the scope of certain requests for production, but Fractus did not respond to Amphenol's offer, nor any of its objections.  (*Id.* at ¶ 6.)

---

[3] The subpoena requested non-party Amphenol's sales and marketing communications concerning the multiband antennas (Request No. 3), all contracts and agreements with the carrier Defendants (Request No. 4), revenue (Request No. 5), patent licenses concerning the multiband antennas (Request No. 6), indemnification (Request No. 7), and any communications relating to Fractus and/or the patents-in-suit (Request No. 8).  (Hyde Decl., Ex. A, July 25, 2018 Document Subpoena, at Request Nos. 3-8.)

[4] Fractus misleadingly suggests that it provided its list of accused antennas in response to Amphenol's objections to the subpoena, but Fractus provided its accused product list nearly a month *before* Amphenol served its objections on August 31, 2018.  *See* Br. at 3 ("Amphenol served objections to the subpoena, taking issue with Fractus's definition of certain terms.  In an effort to narrow the parties' dispute, on August 2, 2018, Fractus provided Amphenol with a list of the antennas it was accusing of infringement in the underlying litigation….") (citation omitted).

Amphenol diligently collected and produced over 37,000 documents relating to the antennas identified on the list of accused products that Fractus provided to Amphenol.[5]  (*Id.* at ¶ 7.)  The technical documents produced by Amphenol include product data sheets, schematics, and detailed pattern files that describe, among other things, the polarizations, gain, radiation patterns, impedance, and electrical downtilt capabilities of the accused antennas.  (*Id.* at ¶ 8.)  Amphenol completed its rolling production on November 13, 2018.  (*Id.* at ¶ 7.)  In December 2018, Fractus sent a request to Amphenol for certain model number guides and additional metadata for Amphenol's production, which Amphenol investigated and provided without objection.  (*Id.*, Ex. D, December Email Chain.)  Despite having initiated a request to Amphenol for additional information and documents, Fractus did not express any concerns about the scope of Amphenol's production.  (*Id.*)  Fractus did not identify any newly accused Amphenol products, and never so much as suggested that the scope of the accused Amphenol antennas was being reconsidered or may change.  (*Id.*)

### B.    Fractus's January 2019 Request That Amphenol Redo Its Production

On January 9, 2019, nearly two months after Amphenol had completed its production, Fractus for the first time disclosed a revised list of antennas.  (*Id.*, Ex. E, Luke Burton 1/9/19 email to Rick Frenkel).  Instead of accurately characterizing these products as newly accused, Fractus wrongly claimed that the newly accused antennas were "omitted" from Amphenol's prior productions.[6]  However, only eight antennas overlapped with those in Fractus's infringement

---

[5] Fractus misleadingly suggests that Amphenol produced only a "limited" number of responsive documents.  *See* Br. at 3.

[6] Fractus misleadingly suggests that it provided infringement contentions and a revised list of accused antennas to Amphenol on January 9, 2019.  *See* Br. at 3 ("Fractus updated its infringement contentions and presented Amphenol with its revised list of accused antennas on January 9, 2019.").  Fractus did not characterize its list as a revision, nor did it provide any infringement contentions at that time.  *See generally* Ex. E, January 9, 2019 Email.  Fractus first provided an

contentions and over 80% were not identified in Fractus's infringement contentions. (*Id*. at ¶ 12.) Worse, many of the newly identified antennas were in fact "single band" antennas, a very distinct technology from the "multiband" antennas that were the subject of Fractus's subpoenas. (*Id*.) Nevertheless, Amphenol promptly began to investigate Fractus's request. (*Id*. at ¶ 13.)

Less than 48 hours after issuing its request, and without any additional notice, Fractus emailed to (wrongly) accuse Amphenol's previously unobjected-to production of being deficient. (*Id*., Ex. F, Luke Burton 1/11/19 email to Rick Frenkel). Fractus's email alleged that Amphenol's November 2018 production was deficient because it failed to include technical documentation for antennas that Fractus first identified to Amphenol on January 9, 2019, and failed to include certain single band antennas—which had never been previously identified as potentially relevant or responsive. (*Id*.) Fractus's deficiency email is problematic for two additional reasons. First, as Fractus admitted on the subsequent meet-and-confer, Fractus's deficiency notice identified entire categories of documents that its Subpoena does not seek.[7] Second, Fractus identified certain categories of documents as "deficient" even though Amphenol had produced the requested documents, indicating Fractus had failed to competently review Amphenol's production.[8]

---

incomplete sample of three infringement charts after the parties' first meet-and-confer on January 18, 2019, and only after Amphenol insisted on receiving them. (*Id*. at ¶ 11.)

[7] *Compare Id*. at Ex. E (deficiency notice seeking asked for "industry reports and analyses" and "documents reflecting Amphenol's supply chain") *with* Ex. A, July 25, 2018 Subpoena.

[8] For example, Fractus identified "contracts with the carrier defendants" as a category for which Amphenol had not produced documents, when those contracts were the very first documents Amphenol produced in response to Fractus's subpoena. (*Id*. at ¶ 15.) Further, during the discussion of another category, "documents reflecting costs of installation, maintenance, service and repair" of the accused antennas, it became apparent that Fractus had never even reviewed Amphenol's contracts with the carrier Defendants to see if the requested information was present there. (*Id*. at ¶ 16.)

C.    **The Parties Meet and Confer**

Fractus and Amphenol met and conferred on January 18 and 24, 2019.  (*Id*. at ¶ 13.)  On

January 18, 2019, Fractus represented that the newly identified antennas were "in the case."  (*Id*.

at ¶ 17.)  This representation was false.  As of January 18, 2019, the newly identified antennas had

not been formally accused in the litigation.  (*Id*. at ¶ 18.)  Fractus first identified these newly-

accused antennas in infringement contentions served on Verizon Wireless January 16, 2018—*five*

*days* after sending its deficiency notice to Amphenol.[9]  (*Id*. at ¶ 19.)  Fractus did not move for

leave to amend its infringement contentions until January 30, 2019.  (*AT&T Mobility*, Case No.

2:18-cv-00135, at Dkt. No. 150.)  Fractus's motion remains pending.[10]

During and after the January 18 meet-and-confer, Fractus represented that it had notified

the carrier Defendants of the newly accused antennas in November 2018, but Amphenol has been

unable to verify that representation with the carrier Defendants.[11]  (*Id*. at ¶ 20.)  Fractus raised a

concern about purported "discrepancies" between the sales data provided by Amphenol and the

purchase data from the carrier Defendants.  (*Id*. at ¶ 21.)  Amphenol agreed to provide sample

---

[9] Fractus falsely asserts that it has "timely provided the Carrier Defendants with updated claim charts as it prepared them upon receipt of their confidential technical information."  Br. at 3 n.3. Fractus did not timely provide updated claim charts to Amphenol.  Fractus also falsely states that it "provided to both Amphenol and the Carrier Defendants detailed infringement contentions specifically explaining how *all* of the antennas in question infringe the Patents-in-Suit."  Br. at 9. Fractus only provided an incomplete "sample" of three charts to Amphenol *at Amphenol's insistence* after the parties' first meet-and-confer on January 18, 2019.  (*Id*. at ¶ 11.)

[10] The motion confirms that Fractus knows that the newly identified antennas were not "in the case" as of January 9 or 11, and that Fractus requires leave of court to get those antennas into the case.

[11] Fractus misleadingly suggests that its revised infringement contentions are the result of "the Carrier Defendants' production of previously unavailable, highly confidential materials."  *See* Br. at 3.  On their face, the infringement charts are "based on publicly available information" and contain excerpts of the datasheets for the newly identified antennas.  (*Id*. at ¶ 11.)  These datasheets were not produced by Amphenol, and are generally available to the public.  (*Id*. at ¶ 11.)

invoice data to help resolve the issue, and did so shortly thereafter.  Fractus agreed to review the contracts and pattern files already produced by Amphenol and report to Amphenol any specific deficiencies, but did not do so.  (*Id.* at ¶ 22.)  At no point during the meet-and-confers did Amphenol agree that venue for a motion to compel is proper in this District.[12]  (*Id.* at ¶ 23.)

Shortly after the January 24 meet-and-confer, Amphenol sent a letter to Fractus memorializing the discussion and requesting that Fractus withdraw its requests.  (*Id.*, Ex. F.)  Other than confirming that it would not withdraw its requests, Fractus did not communicate further with Amphenol regarding its requests prior to filing this motion a month later on February 25, 2019.  (*Id.* at ¶ 25.)

### D.      Fractus Serves Three Additional Subpoenas

On March 4, 2019, Fractus served two ***new*** subpoenas *duces tecum* on non-parties Amphenol Corporation and Amphenol Antenna Solutions, demanding testimony and production of technical, financial, and marketing documents for the revised antenna list.  (*Id.*, Ex. G, March 4, 2019 Subpoenas.)  On March 8, 2019, Fractus served ***yet another*** subpoena on non-party Amphenol Antenna Solutions, Inc. seeking the production of documents relating to (i) the external and internal structures for each base station antenna listed, and (ii) each antenna element used in each base station antenna.  (*Id.*, Ex. H, March 8, 2019 Subpoena.)

## III.    LEGAL STANDARD

### A.      Proper Venue For Motion to Compel

A motion for an order compelling compliance with a subpoena must be filed in "the court for the district where compliance is required."  Fed. R. Civ. P. 45(d)(2)(B)(i).  "Rule 45 specifies

---

[12] Fractus falsely asserts that "Fractus and Amphenol agree that this District is the appropriate venue to resolve this dispute."  Br. 2 n.2.  Amphenol did not.  (Frenkel Decl. at ¶ 23.)

that a motion to compel must be brought in '*the* court for *the* district where compliance *is* required,' not any court of any district where compliance might have been required." *JMC Rest. Holdings, LLC v. Pevida*, No. 14 CIV. 6157(WFK)(VMS), 2015 WL 2240492, at *3 (E.D.N.Y. May 12, 2015) (citation omitted; emphasis in original).

### B.    Discovery Against Nonparties

The Federal Circuit has held that a district court can require a movant to seek discovery from its party opponent before burdening a non-party with an ancillary proceeding. *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (noting that "the need for discovery in an ancillary proceeding is diminished when the information is available elsewhere.") (internal quotation omitted).[13]   This Court, along with others within this Circuit, have held that non-party status is a "significant factor" in determining whether the discovery requested by a subpoena is unduly burdensome, and accordingly should be denied. *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92–93 (D. Conn. 2012) (collecting cases).   Courts may consider "the fact that discovery is being sought *from a third or non-party*, which weighs against permitting discovery." *Id.* at 91.

Indeed, this Court has observed that Federal Rule of Civil Procedure 45(d)(2)(B)(ii) "*mandates* that courts protect third parties from onerous discovery requests," and that courts have relied on this rule to protect nonparties from "significant expense" arising from document production. *Id.* at 92–93 (citing prior version of rule).   Accordingly, "the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs." *Id.* (quoting *Med. Components, Inc. v.*

---

[13] The Federal Circuit has jurisdiction over appeals from ancillary proceedings where the underlying litigation is a patent suit. *Solarex Corp. v. Arco Solar, Inc.*, 870 F.2d 642, 643 (Fed. Cir. 1989).

*Classic Med., Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C. 2002)); *see also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."). And, "[e]ven if a document or record sought is otherwise 'relevant' for purposes of discovery under Rule 26(b) of the Federal Rules of Civil Procedure, a court must limit discovery thereof if it 'is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Tucker*, 281 F.R.D. at 92–93 (quoting Fed. R. Civ. P. 26(b)(2)(C)).

### C.    Issuing Party's Duty to Avoid Undue Burden or Expense

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts must "enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." *Id.* Consistent with these principles, the Federal Circuit has denied a motion to compel against a non-party where the movant had failed to first seek to compel a party, and where the movant relied on speculation that the files held by the non-party might differ from those held by the party. *Haworth*, 998 F.2d at 978 ("Apparently, [plaintiff] seeks impeachment evidence for non-existent testimony, which it had not even attempted to obtain."). This Court has denied a motion to compel compliance with a subpoena where a non-party has, "in apparent good faith, and with seeming due diligence," cooperated with a party's previous discovery requests. *Tucker*, 281 F.R.D. at 96.

Other courts have cited a party's failure to protect a non-party from undue expense as a standalone basis to deny a motion to compel, or to award fees and expenses to a non-party. *See, e.g., ATLC, Ltd. v. Eastman Kodak Co.*, No. 6:06-CV-416-ORL-19KRS, 2006 WL 3422413, at *2 (M.D. Fla. Nov. 28, 2006) (denying a motion to compel when the party seeking enforcement did

not demonstrate how it would compensate the third party or otherwise protect it from undue expense); *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, No. 05 CIV.6298(PKC), 2006 WL 2996645, at *3 (S.D.N.Y. Oct. 13, 2006) (awarding to non-party its fees and expenses incurred in compliance with subpoena); *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A SR, 2013 WL 5652759, at *4 (W.D.N.Y. Oct. 15, 2013) (granting costs and fees incurred responding to a subpoena where the party failed to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

## IV.   ARGUMENT

### A.   Fractus Improperly Filed Its Motion To Compel In This Court

This Court is an improper venue for Fractus's motion to compel.  A motion for an order compelling compliance with a subpoena must be filed in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i).  "Rule 45 specifies that a motion to compel must be brought in '*the* court for *the* district where compliance *is* required,' not any court of any district where compliance might have been required." *JMC,* 2015 WL 2240492, at *3 (citation omitted; emphasis in original).

On its face, Fractus's subpoena requests compliance in San Francisco, California, which is located within the Northern District of California.  (Frenkel Decl., Exs. G, H.)  It does not matter that Amphenol is headquartered in the District of Connecticut; Fractus "selected the location for compliance, and that choice determined the proper venue for [its] motion to compel." *JMC*, 2015 WL 2240492, at *4.  "Any delay or increased expense thus stems from [Fractus's] litigation decisions, including [its] determination to file the motion to compel in this Court and to not revise and reissue the subpoena." *Id.*

Fractus incorrectly asserts in a footnote that the parties "agree that this District is the appropriate venue to resolve this dispute."  Br. 2 n.2.  Even if the parties *could* consent to venue

for a motion to compel under the Federal Rules (Fractus cites no such authority), Amphenol has not consented to venue in this District for the instant motion.  (Frenkel Decl. at ¶ 23.)  Fractus has filed its motion to compel in the wrong court under Federal Rule of Civil Procedure 45(d)(2)(B)(i), and this Court should deny Fractus's motion on that basis alone.

### B.      Fractus's Requests For Production Are Improper

Fractus's cumulative and onerous requests are improper because they would impose significant expense on a non-party in violation of the Federal Rules.  Non-party status is a "significant factor" in determining whether the discovery requested by a subpoena is unduly burdensome.  *Tucker*, 281 F.R.D. at 92–93 (collecting cases).  Federal Rule of Civil Procedure 45(d)(2)(B)(ii) "***mandates*** that courts protect third parties from onerous discovery requests," and that courts have relied on this rule to protect nonparties from "significant expense" arising from document production.  *Id.* (citing prior version of rule).  "Even if a document or record sought is otherwise 'relevant' for purposes of discovery under Rule 26(b) of the Federal Rules of Civil Procedure, a court must limit discovery thereof if it 'is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'"  *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)).  In particular, "the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party."  *Id.*

Amphenol fully complied with the Subpoenas in good faith and with due diligence, producing more than 37,000 documents.  *See supra* Section II.A; Frenkel Decl. at ¶ 7. For the reasons that follow, Fractus is not entitled to an order compelling a redo and re-production of the requested discovery because such an order would impose undue burden and significant expense on non-party Amphenol in violation of the Federal Rules.

1.      Technical Documents

Fractus's request for technical information relating to the newly identified antennas is improper because it is unreasonably cumulative and unduly burdensome.  As an initial matter, the newly identified antennas are not currently accused in the Texas case because the Texas court has not granted leave to Fractus to amend its infringement contentions—which requires a showing of good cause.  *See supra* Section II.C; E.D. Tex. P.R. 3-6(b).

Even if the Texas court grants leave, Fractus's request for the newly identified antennas is unreasonably cumulative and unduly burdensome because Amphenol has already fully complied with Fractus's original request in good faith and with due diligence.  The newly identified antennas were first raised to Amphenol in January 2019, months after Amphenol had already had completed its production for scores of other antennas that were previously identified by Fractus.  *See supra* Section II.B; Frenkel Decl., Ex. E.  Fractus failed to timely respond to Amphenol's objections to the Subpoena, which were served in August 2018 and included an objection as to the scope of the accused "multiband base station antenna."  *See supra* Section II.A; Frenkel Decl., Ex. C, at Responses 1, 2. And Fractus also failed to notify Amphenol as soon as it realized that it intended to accuse the newly identified antennas—which by its own admission occurred in November 2018. *See supra* Section II.C; Frenkel Decl. at ¶ 20.

As an excuse for its delay, Fractus claims that its infringement contentions for the newly identified antennas are based on highly confidential information it only recently received from the carrier defendants.  Fractus is wrong.  The three sample charts that Fractus provided to Amphenol appear to be based on publicly available information that was available to Fractus from the start of the litigation.  *See supra* Section II.C; Frenkel Decl. at ¶ 11.  The newly identified antennas are mostly single band and twin band antennas, which are different classes from the multiband antennas that Fractus originally accused.  *See supra* Section II.B; Frenkel Decl. at ¶ 12.  In contrast

15

to the Texas cases cited by Fractus, *see* Br. 8-9, these products do not operate similarly, nor are they "reasonably similar" to multiband antennas.  For at least these reasons, this Court should not grant Fractus a near-complete rewrite of its accused product list months after Amphenol, a non-party, already completed its production.[14]

Fractus's request for technical information at the individual element level is also unreasonably cumulative and unduly burdensome at least because it goes beyond the scope of the Subpoena.  The Subpoena requests documents "sufficient" to identify certain characteristics of the accused antennas.  (Frenkel Decl., Ex. A, at Request No. 2.)  Fractus has not explained how the thousands of pattern files already produced by Amphenol are insufficient to identify the specified characteristics.  Instead, Fractus only asserts that the requested simulation data is "relevant."  Br. at 9-10 ("[S]imulation data is relevant to issues of infringement such as whether an antenna element is a 'multiband' element and whether it is operable in frequency ranges claimed by the patents-in-suit.").  Furthermore, the Subpoena does not request the "the polarizations, gain, radiation patterns and impendence [*sic*] and impedance patterns" at the individual element level, even though the Subpoena requests information at the individual element level elsewhere.  (*Compare* Frenkel Decl., Ex. A at Request No. 2(g)) ("polarizations, gain, radiation patterns . . . ***associated with the antenna arrays***") *with* Request No. 2(f) ("frequency ranges and frequency bands . . . ***[for] each individual antenna element***").)  Fractus's observation that it "specifically identified antenna element-level information in eight out of ten subcategories for which it seeks documents," Br. 9, only underscores that Fractus knew how to ask for information at the individual

---

[14] Alternatively, instead of burdening non-parties with onerous and duplicative discovery requests, Fractus should have obtained the purportedly "confidential" discovery it contends caused it to materially alter its infringement contentions *before* seeking non-party discovery, so its subpoenas could have been properly focused on the products it sought, and the Texas court permitted it, to allege infringed its patents.

element level, yet failed to do so.  To the extent that Fractus believed that it had requested this information, Fractus failed to timely raise its concern to Amphenol, instead waiting for nearly two months after Amphenol had completed its production.  *See supra* Section II.B; Frenkel Decl., Ex. B.  This Court should not permit Fractus to retroactively rewrite its Subpoena to Amphenol, a non-party, to request information that it never included in its detailed requests (and that it likely does not need).

### 2.   Sales and Marketing Documents

Fractus's requests for "sales and marketing documents" for the new antennas are improper for the same reason that the technical document for the new antennas is improper.  Specifically with respect to Requests for Production 3-5, Amphenol has already collected and produced for the original set of nearly 100 accused antennas actually sold to the carrier Defendants (i) sales and marketing documentation, (ii) contracts and agreements relating to those antennas, and (iii) revenue figures for sales to the carrier Defendants.  *See supra* Section II.A; Frenkel Decl. at ¶ 7. For this reason alone, Fractus's motion to compel should be denied.

In addition, these topics are overly broad, unduly burdensome, and can more readily be obtained from the defendants.  Fractus can obtain sales and marketing communications provided to the carrier Defendants from the carrier Defendants themselves.  Same as to the contracts between Amphenol and the carrier Defendants.[15]

---

[15] Amphenol has already produced all contracts and agreements with the carrier Defendants that it identified with a reasonable search of its records.  *See supra* Section II.B; Hyde Decl. at ¶ 14.  In fact, these were the very first documents Amphenol produced to Fractus.  *Id*.  On the meet and confer, it became apparent that Fractus had not reviewed the agreements that Amphenol had already produced, so Amphenol requested that Fractus review the agreements and determine whether the information it seeks is not present.  *See supra* Section II.B; Hyde Decl. at ¶ 15   To Amphenol's knowledge, Fractus has not done so.  *Id*.  Regardless, Fractus can and should obtain this information from the carrier Defendants.

With regard to Request for Production 5, which relates to revenues, Fractus claims that it needs discovery from Amphenol to investigate "numerous discrepancies" between the sales documents provided by the carrier Defendants and various third parties, many of which are "highly consequential." Br. 12. Fractus is wrong. Amphenol is only aware of one purported discrepancy in the sales data, which Amphenol already voluntarily helped to resolve. *See supra* Section II.C; Frenkel Decl. at ¶ 22. Specifically, Amphenol provided additional sales invoices to Fractus to help it identify the source of the purported discrepancies. *Id.* As far as Amphenol understands, there were slight variances in the way that Amphenol and the carriers record model numbers for the accused antennas, and that issue was resolved. *Id.* Regardless, Fractus has not brought any other purported discrepancies to Amphenol's attention, much less attempted to resolve them prior to resorting to this Court. Nor does Fractus identify any specific discrepancies in its brief that would be resolved by an order from this Court.

Fractus relies on a couple of cases for the proposition that it is entitled to duplicative discovery from Amphenol. These cases are unavailing. First, Fractus relies on a single paragraph without any citation to authority from *LG Display Co., Ltd. v. Chi Mei Optroelectronics Corp.*, No. 08cv2408-L (POR), 2009 WL 223585, at *3 (S.D. Cal. Jan. 28, 2009), an unpublished order that is not binding on this Court. Regardless, *LG Display* presents a different entirely context. There, the court noted that non-party Sony had delayed filing its objections, giving multiple representations to the movant that the documents were coming, and that Sony's delays had pushed out document production to the eve of the discovery deadline. *Id.* at *2. In those particular circumstances, the court's order compelling duplicative discovery over Sony's objection may have been warranted, although it certainly was not supported by authority. Here, in contrast, Amphenol provided timely objections and completed its productions long before the discovery deadline. It

18

was Fractus that failed to respond to Amphenol's objections, and it was Fractus that waited until months after Amphenol had completed its production before identifying any purported deficiencies.

Next, Fractus relies on *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 124534, at *1 (D. Kan. Jan. 14, 2011), a second unpublished order that is not binding authority on this Court.  There, the non-party Ericsson was "***contractually obligated*** to generate and maintain the subpoenaed documents relating to [named defendant] Sprint's network in the normal course of business."  *Id.*  And it was "not at all readily apparent that the subpoenaed documents sought by *High Point* are also obtainable from [named defendant] Sprint."  *Id.* at 3. Amphenol is not contractually obligated to the carrier Defendants to generate and maintain the subpoenaed documents, so it is not a "contractual custodian" as discussed in *High Point*.

It is telling that Fractus does not mention *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, the controlling Federal Circuit authority that the *High Point* court considered at length.  In *Haworth*, the movant argued that because there was no evidence that the party and non-party's files are the same, it was entitled to production of the non-party's files regardless of its diligence in seeking production of the files from the party.  998 F.2d at 978.  The Federal Circuit rejected that argument, holding that the district court could properly require the movant to seek discovery from its party opponent before burdening the non-party in an ancillary proceeding.  *Id.*  The Federal Circuit found that, as a general matter, "the need for discovery in an ancillary proceeding is diminished when the information is available elsewhere."  *Id.*  The court further observed that "[a]pparently, [the movant] seeks impeachment evidence for non-existent testimony, which it had not even attempted to obtain."  *Id.*  Similarly, Fractus seeks discovery from a non-party instead of seeking it from the carrier Defendants.  This Court should hold that Fractus must seek the

subpoenaed sales and marketing documents from the carrier Defendants instead of further burdening non-party Amphenol.

3.    Communications Mentioning Fractus and/or Its Patents

Fractus also contends that Amphenol, a non-party, should be ordered to search the entirety of its communications with ***anyone*** for ***all time*** for any reference to Fractus or its patents.  *See* Br. 13.  Fractus must have an inflated view of its place in commerce.  Regardless, Fractus is wrong for two main reasons.  First, Amphenol has already produced its post-suit, non-privileged communications regarding indemnification, by agreement.  *See supra* Section II.B; Frenkel Decl. at ¶ 8.  Second, as with the requested sales and marketing communications referenced above, any other non-privileged communications Amphenol had with the carrier Defendants would be available to Fractus through discovery from the carrier Defendants.  Any other internal or third-party communications are far beyond the production burden that Amphenol, a non-party, should reasonably bear.

Fractus also claims that Amphenol has not articulated any reason why it should not produce any communications mentioning Fractus or the Patents-in-Suit.  Br. 13.  Fractus is wrong.  As Amphenol repeatedly explained in its objections, in the meet-and-confers, and in correspondence, it is unduly burdensome to request that Amphenol search the entirety of its communications for all time for mere "mentions" of Fractus or its patents.  (*See, e.g*., Frenkel Decl., Ex. C.)  Amphenol would not only have to coordinate a costly search across all of its electronic files; Amphenol would also have to review all of the responsive communications for privilege and confidentiality.  And Fractus has failed to provide a *prima facie* basis sufficient to determine that all "mentions" would be relevant to the claims and defenses at issue in the Texas litigations.

Despite Amphenol's objections, Fractus has not provided any explanation for the relevance of, or purpose for, its request.  Absent an explanation, the balance weighs strongly in favor of

Amphenol.  As this Court held in *Tucker*, "absent a showing that plaintiff either cannot obtain—or in fact has not obtained—ample discovery on the essential elements of [its] claim," this Court "should refrain from ordering yet another broad and costly search [for a non-party's documents] which may not exist." *Tucker*, 281 F.R.D. at 96.  Indeed, this overly broad and speculative request reveals Fractus's desire to "dredge an ocean of [Amphenol's] electronically stored information and records in an effort to capture a few elusive, perhaps non-existent, fish." *Id.* at 96.  For at least these reasons, this Court should reject Fractus's motion to compel production for this request.

### C.    Fractus Has Failed To Take Reasonable Steps To Avoid Imposing Undue Burden And Expense On Nonparty Amphenol

Fractus's motion to compel should be denied because Fractus has failed to take reasonable steps to avoid imposing undue burden and expense on non-party Amphenol, as required by the Federal Rules.  "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  Courts must enforce this duty with appropriate sanctions, and protect nonparties from "significant expense" resulting from compliance.  Fed. R. Civ. P. 45(d)(1)-(2). Consistent with these provisions, this Court has denied a motion to compel compliance with a subpoena where a non-party has, "in apparent good faith, and with seeming due diligence," cooperated with a party's prior discovery requests, holding that the additional request would be likely to impose "significant expense" on the non-party.  *Tucker*, 281 F.R.D. at 96 (quoting prior version of Fed. R. Civ. P. 45(d)(2)).  Other courts have cited this provision of the Federal Rules as a standalone basis to deny a motion to compel, or to award fees and expenses to a non-party for the cost of its response.  *See, e.g., ATLC*, 2006 WL 3422413, at *2 (denying a motion to compel when the party seeking enforcement did not demonstrate how it would compensate the third party or otherwise protect it from "undue burden or expense") (citing prior version of Fed. R. Civ. P.

21

45(d)(1)); *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, No. 05 CIV.6298(PKC), 2006 WL 2996645, at *3 (S.D.N.Y. Oct. 13, 2006) (awarding to non-party 50% of its fees and 100% of its expenses incurred in compliance with subpoena, even where no breach of duty under Rule 45) (citing prior version of Fed. R. Civ. P. 45(d)(1)-(2)); *Zoological Soc.*, 2013 WL 5652759, at *4 (granting costs and fees incurred responding to a subpoena where the party failed to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

Amphenol has already complied with Fractus's subpoena in good faith and with due diligence, producing tens of thousands of responsive documents. *See supra* Section II.A; Frenkel Decl. at ¶ 7. Meanwhile, Fractus has failed to take reasonable steps to avoid imposing undue burden or expense on Amphenol. In particular, Fractus initially provided a list of nearly 100 accused antennas that Amphenol used to collect and produce tens of thousands of responsive technical documents, but failed to timely notify Amphenol when it identified an almost entirely different set of antennas it intended to accuse. *See supra* Section II.C; Frenkel Decl. at ¶ 20. Fractus also failed to timely respond to Amphenol's objections to the Subpoena, and only accepted Amphenol's offer to meet and confer two months after Amphenol had already completed its production. *See supra* Section II.C; Frenkel Decl. at ¶ 6. In its Subpoena, Fractus failed to request the production of element-specific technical information that it now seeks this Court to compel. *See supra* Section IV.B.1; Frenkel Decl., Ex. A. Fractus failed to review certain documents in Amphenol's production to narrow or modify its requests, despite promising to do so on the parties' meet-and-confers. *See supra* Section II.C; Frenkel Decl. at ¶ 17. In correspondence following the first meet-and-confer, Amphenol put Fractus on notice that Fractus was not in compliance with its obligations under Federal Rule of Civil Procedure 45(d)(1), but Fractus filed the instant motion

instead of narrowing or withdrawing its requests.  *See supra* Section II.C; Frenkel Decl., Ex. F. Fractus filed the instant motion prior to obtaining leave from the Texas court to amend its infringement contentions.  *See supra* Section II.C.  And with the instant motion, Fractus persists with unnecessarily broad discovery requests, such as all communications for all time mentioning Fractus or the patents-in-suit. *See supra* Section IV.B.3.

For at least these reasons, Fractus has already imposed significant expenses on Amphenol through its own dereliction of duty under the Federal Rules.  This Court should deny Fractus any further opportunity to impose significant expenses on Amphenol.

(i) If the Court sees fit to deny Fractus's motion, the Court should award the fees and expenses associated with opposing the motion, which is facially deficient because Fractus has filed its motion to compel in the wrong court under Federal Rule of Civil Procedure 45(d)(2)(B)(i).[16]

(ii) If the Court sees fit to grant Fractus's motion and order any production to Fractus under the instant motion, the Court should award fees and expenses associated with such production to Amphenol to mitigate the significant expenses it has already incurred due to Fractus's violation of its duty under the Federal Rules.

Either way, Amphenol respectfully requests that the Court award its reasonable fees and costs, and direct Amphenol to provide documentation to the Court supporting that request.

## V.    CONCLUSION

Fractus's motion to compel should be denied and the Court should award the fees and expenses associated with opposing the motion.  In the alternative, should this Court order any

---

[16] Should Fractus withdraw its facially deficient motion, Amphenol maintains its request for oral argument so that the Court may consider awarding the fees and expenses associated with opposing the motion.

further production to Fractus, this Court should award fees and expenses to Amphenol associated with such further production.

DATED:  March 18, 2019                          Respectfully submitted,

                                                */s/ Jessica Bengels*_____
                                                Jessica L. Bengels (ct29396)
                                                Clement J. Naples  (*Pro hac vice* pending)
                                                LATHAM & WATKINS LLP
                                                885 Third Avenue
                                                New York, NY 10022-4834
                                                Tel: 212.906.1200
                                                Fax: 212.751.4864
                                                Email: *jessica.bengels*@lw.com
                                                *clement.naples*@lw.com

                                                Maximilian A. Grant (*Pro hac vice* forthcoming)
                                                LATHAM & WATKINS LLP
                                                555 Eleventh Street, NW Suite 1000
                                                Washington, D.C. 20004-1304
                                                Tel:  202-637-2200
                                                Fax:  202-637-2201
                                                Email: *max.grant@lw.com*

                                                Richard G. Frenkel  (*Pro hac vice* pending)
                                                LATHAM & WATKINS LLP
                                                140 Scott Drive
                                                Menlo Park, CA 94025
                                                Tel: 650.328.4600
                                                Fax: 650.463.2600
                                                Email: rick.frenkel@lw.com

                                                Bradley A. Hyde  (*Pro hac vice* pending)
                                                LATHAM & WATKINS LLP
                                                140 Scott Dr.
                                                Menlo Park, CA 94025
                                                Tel:  650-328-4600
                                                Fax:  714-755-8290
                                                Email: *bradley.hyde@lw.com*

                                                *Attorneys for Respondent Amphenol Corporation*

24